THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY WILLIAM GRAHAM, Defendant-Appellant.

(No. 74-43;

Third District—

854

James Geis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

Max B. Stewart, State's Attorney, of Carthage (F. Stewart Merdian and Charles D. Sheehy, Jr., of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Hancock County Circuit Court finding defendant, Roy William Graham, guilty of aggravated assault and of armed violence. He was sentenced to a term in the penitentiary of 1 to 3 years. The defendant was indicted on four counts of aggravated assault under the provisions of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(1), (6)) and on 2 counts of armed violence under section 33A—2 of the Code.

From the record it appears that on October 24, 1972, defendant called the police and warned them "he was on another terror." He thereafter went to the house of his ex-wife and demanded her gun. He finally threatened her with a knife to obtain the gun. The gun was unloaded, but defendant told his wife he would find some ammunition. He thereafter stopped briefly at a neighbor's house before driving away. Police officers followed Graham out into the country where they stopped him. When defendant got out of his pickup truck, Trooper Giacomelli entered it and removed the keys from the ignition. Another officer sprayed Mace at defendant's face, and defendant ran off some 30 to 75 feet. He then turned, pointed a gun at Giacomelli, and finally ran off into a cornfield from which he emerged on the road some minutes later. At this point defendant was coaxed into a police car and taken to the station, although he was not disarmed. He was later released and arrested the next day. Officers testified they were familiar with Graham and his occasional episodes of similar conduct.

The testimony indicated that defendant had been drinking on the night in question and that Graham had been treated previously for mental problems. The officers also testified that on the night of the incident, Graham complained that an operator had refused to put his call through to the Governor in Springfield. The officers also testified that he told police that he could throw a knife well and could outrun any of them because he was an Indian. As we have indicated, Graham was charged with two counts of assault with a deadly weapon (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(1)) (one for each weapon—gun and knife) and two counts of assaulting a police officer (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(6)), all of which are classified as "aggravated assaults" under Illinois law. Defendant was also charged with two counts of armed

violence under section 33A—2, which provides in relevant part: "A person commits armed violence when, while armed with a dangerous weapon, he performs any act prohibited by Sections * * * 12—2 * * * of this Act."

■■ On appeal in this court, defendant challenges the sufficiency of the armed-violence counts of the indictment and asserts that the indictment fails to properly charge an offense. The State argues that defendant has waived such issue by not raising it at the trial court level. While we agree that the general rule is that points not raised at trial may not be considered by the reviewing court, under the Code of Criminal Procedure there is a specific provision that an attack may be made upon an indictment for failing to state a charge and that such attack may be raised initially upon appeal (Ill. Rev. Stat. 1971, ch. 38, pars. 114—1(a)(8), (b); *People v. Heard*, 47 Ill.2d 501, 505, 266 N.E.2d 340 (1970); *People v. Brakebill*, 9 Ill.App.3d 691, 692, 292 N.E.2d 491 (3rd Dist. 1973)). We, therefore, determine that we should consider defendant's attack on the indictment.

The armed-violence counts of the indictment charged that defendant, while armed with deadly weapons (the gun and the knife), violated section 12—2(a)(1)—assault with a deadly weapon. Defendant contends that the incorporation by reference of section 12—2 (aggravated assault) into section 33A—2 (armed violence) was not meant to include assault with a deadly weapon (section 12–2(a)(1)), and also defendant asserts alternatively that to construe the armed-violence statute otherwise would raise serious constitutional questions of equal protection and delegation of legislative authority. Assault with a deadly weapon, like other forms of aggravated assault, is a Class A misdemeanor. Armed violence is a Class 4 felony, with a possible penitentiary sentence. To the extent that section 33A—2 incorporates section 12—2(a)(1), the conduct proscribed by both provisions is identical and co-extensive, that is, both prohibit assaults with deadly weapons. (Section 33A—2 is also the basis for the prosecution of other crimes when committed with deadly weapons, but those situations are not involved here nor are they affected by what is said in this opinion.)

■■ Defendant argues that the prosecutor has absolute discretion to charge either the felony of armed violence or the misdemeanor of aggravated assault when the conduct involved is assault with a deadly weapon, and because of the right of the prosecutor to make such election defendant contends that the act violates equal protection of the laws, and that there is also an unconstitutional delegation of legislative power to impose penalties for criminal activities. This issue has been raised a number of times in this court and in the Illinois Supreme Court. The

Illinois Supreme Court has held that where criminal conduct is prohibited by two different statutes, which provide different penalties, there is no constitutional problem in the prosecution of a defendant under the statute which provides the greater penalty. (*People v. McCollough*, 57 Ill.2d 440, 313 N.E.2d 462 (1974), reckless homicide/involuntary manslaughter. See also *People v. Keegan*, 52 Ill.2d 147, 286 N.E.2d 348 (1971), *cert. denied* (1972), 406 U.S. 964, indecent liberties with a child/contributing to the sexual delinquency of a child). The court has also considered the provisions of the statute on aggravated battery, which existed prior to the Unified Code of Corrections (Ill. Rev. Stat. 1971, ch. 38, par. 12—4), and concluded that the provisions were not unconstitutional because they allowed a range of penalties from a fine and/or jail sentence up to imprisonment in the penitentiary. *People v. Williams*, 15 Ill.App.3d 294, 304 N.E.2d 150 (3rd Dist. 1973); *People v. Chambers*, 15 Ill.App.3d 23, 303 N.E.2d 24 (3rd Dist. 1973).

■■ While the penalty provision for assault with a deadly weapon is such that a choice could be made as to whether it is a Class A misdemeanor or a Class 4 felony, the State's attorney as representative of the People is vested with discretion and responsibility to determine which crimes should be charged and what penalties should be sought in criminal cases (*People v. Rhodes*, 38 Ill.2d 389, 396, 231 N.E.2d 400 (1967)). While we have been directed to no such penalty provision of the criminal code since the enactment of the Unified Code of Corrections, effective on January 1, 1973, such provisions were common before the passage of the Code. The courts have found no sound reason why the legislature should not be free to provide both felony and misdemeanor penalties for the same conduct in appropriate cases where prosecution seeking a greater or lesser penalty may be consistent with the nature of the offense. It is clear that there is no constitutional infirmity in the legislative provision for both felony and misdemeanor penalties for the crime of assault with a deadly weapon, in the alternative sections considered in the instant case. (Section 12—2(a)(1) and 33A—2.)

We have noted defendant's argument and the relevant legislative history for the purpose of checking to determine the legislative intent. Prior to 1923, assault with a deadly weapon was the only form of aggravated assault, and the use of the weapon was a factor aggravating the assault and suggesting the increased penalty. Commencing in 1923, the legislature added other categories of aggravated assault in the years following, which categories did not involve the use of a weapon but rather were dependent upon the character of the assailant (*e.g.*, hooded, masked, or robed) or the character of the victim (*e.g.*, policeman, fireman, teachers, government employees). Currently, an assault falling

into one of these categories of section 12—2(a) is considered "aggravated" and is classified as a Class A misdemeanor, while simple assault is a Class C misdemeanor.

It appears obvious that the legislature intended, when it passed the armed-violence statute in 1967 (article 33A) to respond emphatically to the growing incidence of violent crime. (*Cf. People v. Hardaway,* 108 Ill.App.2d 325, 332, 247 N.E.2d 626 (4th Dist. 1969).) Section 33A—2 contains a special statutory prohibition for commission of any of several enumerated crimes (*e.g.,* kidnapping, rape, deviate sexual assault, aggravated assault, aggravated battery, grand theft, intimidation) while armed with a dangerous weapon. As it relates to section 12—2, the armed violence act provided a felony penalty for any assault which, once aggravated by the nature of the victim or the disguise of the assailant, was further aggravated by the use of a deadly weapon.

We agree that it was highly significant that, at the same time the legislature adopted the armed violence statute it amended the aggravated assault statute to exclude section 12—2(a)(1), assault with a deadly weapon (Laws of Illinois 2595 (1967)). This seems logical since the weapon, the aggravating factor in armed violence, was already present in section 12—2(a)(1). This legislative activity, however, left an apparent gap in criminal law provisions. An assault with a deadly weapon was only a simple assault, unless performed against a victim such as a peace officer or teacher, or by a hooded or masked assailant, in which case it was also armed violence. An assault without a weapon against a policeman or teacher was still an aggravated assault. The method of revision created a situation where assault with a deadly weapon could not be punished as an aggravated assault. This omission was remedied in 1968, when the legislature reinstated section 12—2(a)(1) (Laws of Illinois 99 (1968)). The armed-violence statute, section 33A—2 incorporates certain provisions of the Criminal Code, including section 12—2, by specific reference.

When the legislature reinstated section 12—2(a)(1), it obviously intended, in view of the existing provisions of the armed-violence statute, to make it possible to charged armed violence where there was an assault with a deadly weapon. If the legislature did not so intend, it could easily have incorporated an exception as to assault with a deadly weapon. ■■ While we agree that section 12—2(a)(1) was pointedly omitted when the armed-violence statute was adopted, it was also pointedly reinserted by the legislature in 1968 when it was known that the provisions of the armed-violence statute would incorporate such provision by reference. Therefore, we should follow the maxim that implementing the legislative intent is always the cardinal rule in judicial construction of

statutes. (*Inskip v. Board of Trustees*, 26 Ill.2d 501, 510, 187 N.E.2d 201 (1962); *People ex rel. Kucharski v. Adams*, 48 Ill.2d 540, 543, 273 N.E.2d 7 (1971).) As evidenced by the history which we have reviewed herein, the legislative intent obviously was that section 12—2(a)(1) when reinserted was intended to be subject to incorporation by reference in the armed-violence statute provisions, particularly when so quickly reinserted. There was an obvious intent that the penalty for any aggravated assault with a deadly weapon would be enhanced and possibly punished under the armed-violence provision. *Cf. People v. Hardaway*, 108 Ill.App.2d 325, 247 N.E.2d 626.

■■ Defendant makes an alternative argument that the aggravated-assault convictions must be vacated as they arose out of the same course of conduct (*People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1 (1974)). We note that the State concedes this point, and we agree. The aggravated-assault convictions are herewith vacated.

■■■ Defendant raises two other issues, (1) that a gun which is not shown to be loaded is not a deadly weapon, and (2) that the court erred in permitting the State's expert witness to testify concerning defendant's sanity. While an assault with an unloaded gun is obviously made with a deadly weapon (*People v. Halley*, 131 Ill.App.2d 1070, 268 N.E.2d 449, 450 (1971)), it is not necessary that we consider the first argument. The jury returned a general verdict of guilty on four counts of aggravated assault and two counts of armed violence. Since there were duplicate counts as to the gun and the knife which were wielded by defendant, even if we were to uphold defendant's argument and vacate the conviction insofar as it pertains to the gun, the conviction would stand because of the use of the knife. *People v. Lymore*, 25 Ill.2d 305, 185 N.E.2d 158 (1962).

As to the second contention, the record shows that Dr. Kyden testified in rebuttal for the State. The doctor examined defendant on March 9, 1973, for the purpose of determining his competency to stand trial, in an hour-long interview. He was subsequently requested to give an opinion as to defendant's mental condition on the night of the incident, and testified, over defense objection, that from his observations of defendant and from reports of the State's attorney's office, he was of the opinion that defendant was sane on the night of October 24, 1972. The doctor testified that the reports he received from the State's attorney's office simply related to the "charges and happenings." The doctor concluded that defendant was sane on the night of October 24, 1972.

■■ In *People v. Black*, 367 Ill. 209, 10 N.E.2d 801 (1937), the supreme court held that it was error to allow a doctor to testify when his opinion was based in part on reports submitted by others and not before the jury

or court. While the State argues that the trend in Federal courts and in other States is against this position, we still consider the *Black* case to be the law in this State, and we feel that the opinion of the expert must be based upon facts found in the record. (*Craft v. Acord,* 20 Ill.App.3d 231, 236.) On the basis of the record before us, however, it is clear that Dr. Kyden relied upon the State's attorney's report only to the extent of the charges which were made and the facts of the incident which were brought out by other witnesses at the trial. Defense, on cross-examination could have probed into the contents of these reports if it doubted that this was an accurate description of the nature of the reports from the State's attorney. Defendant, however, did not do so. On the basis of the record before us, we therefore believe that there was no such error in admitting the expert opinion as would justify reversal, since the opinion of the expert was based upon facts found in the record and his own medical knowledge and his observations of defendant.

The sentence imposed by the court of 1 to 3 years in the penitentiary was based on the armed-violence charges. This was an appropriate sentence under the statutory provision. As we have indicated, the convictions for aggravated assault are vacated and the conviction for armed violence is affirmed.

Conviction for armed violence affirmed.

STENGEL and BARRY, JJ., concur.