THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY VAN WINKLE, Defendant-Appellant.

Third District    No. 79-888

Opinion filed July 14, 1980.—Rehearing denied August 12, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Jeffrey W. O'Connor, State's Attorney, of Cambridge, for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a shooting incident at a tavern, defendant Jerry Van Winkle was charged by information with armed violence, attempt murder, and aggravated battery. After a jury trial he was convicted of those offenses and of battery and was sentenced on the armed violence conviction to a determinate term of imprisonment of 6 years.

At trial the State's evidence established that on March 16, 1979, sometime after 11 p.m., defendant entered Ann's Tavern in Kewanee accompanied by a small boy. He asked the boy, "Do you see him here?" or "Is that him?" The boy pointed at Timothy Melchouri and replied, "Yes." Defendant approached Melchouri and asked him, "Have you been fucking with my kid?" Melchouri replied in the negative, and defendant pulled a gun from his pocket and shot Melchouri in the neck. Several witnesses described defendant's speech as clear and deliberate, not slurred.

For the defense, Jerry Scott gave testimony that tended to show defendant was drunk at the time of the incident. Defendant's wife testified that on the date in question, before the incident, she told defendant that their two sons, Jerry Jr. (9 years old) and Jimmy (7 years old), told her that they had been in a house down the street earlier that day where some guys had offered them beer, and told them to cuss and to make finger gestures on a television screen there. The guys also told them there were some kids buried in the house and gave them a dollar not to tell anyone. Continuing with defendant's wife's testimony, Jerry Jr., while in tears, repeated the story to defendant. After telephoning the police, while somewhat drunk, defendant left the house with Jerry Jr.

Defendant's first two arguments on appeal concern the construction and validity of section 33A—2 of the Criminal Code of 1961, which provides:

> "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.)

The felony which served as the basis for defendant's armed violence conviction was the aggravated battery of Melchouri under section 12—4(b)(1) of the Code, which provides:

> "A person who, in committing a battery * * *:
>
> (1) Uses a deadly weapon * * * commits aggravated battery." (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b).)

Defendant first argues that aggravated battery under section 12—4(b)(1), a Class 3 felony (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(d)), should not be considered a "felony" for purposes of the statute defining armed violence. He maintains the legislature did not intend the use of a pistol to be used as an aggravating factor twice, *i.e.*, to convert battery, a Class A misdemeanor (Ill. Rev. Stat. 1979, ch. 38, par. 12—3(b)), into aggravated

battery, a Class 3 felony, and then into armed violence, a Class X felony (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 and 33A—3).

■■ We disagree. Prior to its amendment in 1977 (1977 Ill. Laws 3264, §1), section 33A—2 provided that a person committed armed violence when, while armed with a dangerous weapon, he performed any act prohibited by certain enumerated sections of the Criminal Code, including section 12—2 (aggravated assault), but not including section 12—1 (assault) (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). In *People v. Graham* (1975), 25 Ill. App. 3d 853, 323 N.E.2d 441, the defendant was convicted of armed violence under this statute. The offense which served as the basis for the armed violence charge was aggravated assault under section 12—2(a)(1), which provided:

> "A person commits an aggravated assault, when, in committing an assault, he: (1) Uses a deadly weapon." (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a).)

Graham made essentially the same argument advanced in the instant case, that the legislature did not intend the use of a deadly weapon to be used as an aggravating factor twice to convert assault into aggravated assault and then into armed violence. This court noted that at the same time the legislature adopted the armed violence statute, it amended the aggravated assault statute to exclude section 12—2(a)(1), assault with a deadly weapon. We noted that this action seemed logical since the weapon, the aggravating factor in armed violence, was already present in section 12—2(a)(1). We pointed out, however, that the legislative action left a gap in the criminal law since assault with a deadly weapon was then only a simple assault. Finally, we concluded that when the legislature reinstated section 12—2(a)(1) in 1968, it obviously intended to make it possible to charge armed violence in the case of an assault with a deadly weapon. This court stated:

> "If the legislature did not so intend, it could easily have incorporated an exception as to assault with a deadly weapon." (25 Ill. App. 3d 853, 858, 323 N.E.2d 441, 445.)

In view of the legislative history outlined in *Graham*, we conclude that had the legislature intended to avoid the possibility of double enhancement, it would have done so explicitly. However, section 33A—2, as amended, provides that a person commits armed violence when, while armed with a dangerous weapon, he commits "any felony." The language means what it plainly says, and "any felony" includes the Class 3 felony of aggravated battery.

Defendant seeks support for his position in section 33A—3 of the Criminal Code, which sets forth the penalty for armed violence, in part, as follows:

> "[A first v]iolation of Section 33A—2 with a * * * Category II weapon [bludgeon, blackjack, etc.] is a Class 2 felony *or the felony*

*classification provided for the same act while unarmed,* whichever permits the greater penalty." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3.)

He argues that the above language indicates that the predicate offense for armed violence must be one which, if committed unarmed, would have been a felony. Since if defendant had committed a battery on Melchouri while unarmed, the offense would have been a misdemeanor, defendant argues, it cannot serve as the predicate offense for armed violence. In light of the legislative history discussed above, and the language "any felony" in the statute defining armed violence, we believe that to the extent section 33A—3 creates any ambiguity, it should be resolved in favor of permitting aggravated battery under section 12—4(b) (1) to serve as the predicate felony. Defendant's reliance on *Busic v. United States* (1980), ___ U.S. ___, 64 L. Ed. 2d 381, 100 S. Ct. 1747, is misplaced since that case involved a statute with significantly different legislative history.

Defendant's second contention is that section 33A—2 is unconstitutional as applied. He relies on *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, in which our supreme court held section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)) violated the due process clause of the Illinois Constitution insofar as it established a greater penalty for possession than for delivery of certain controlled substances. The court cited section 100 of the Act, which set forth its purposes and objectives and explicitly stated that the legislature's intent was to punish large-scale unlawful traffickers of controlled substances more severely than unlawful users or occasional petty distributors.

Section 402(b) was held unconstitutional because it was not reasonably designed to remedy the evil which the legislature determined to be a greater threat to the public. In the instant case, defendant contends that the armed violence statute, insofar as it permits double enhancement of battery, first into aggravated battery and then into armed violence, is not reasonably designed to remedy the evils which the legislature has determined to be a threat to public safety.

■ This argument is not persuasive. In *Graham* this court concluded that in enacting the armed-violence statute, the legislature intended to respond emphatically to the growing incidence of violent crime. (25 Ill. App. 3d 853, 858, 323 N.E.2d 441, 444.) The double enhancement of which defendant complains is certainly consonant with that purpose. It is not the function of this court to strike down legislation under the due process clause because some might think it unwise or would have drafted it differently.

■ Defendant's third argument challenges the sufficiency of that count of the information charging armed violence, which alleged that:

"[W]hile armed with a dangerous weapon, a pistol, [defendant]

performed acts prohibited by the Illinois Revised Statutes, Chapter 38, Section 12—4b1, in that he, knowingly and without legal justification, shot Timothy Melchouri in the neck, thereby causing bodily harm to [Melchouri]."

Since this issue was raised in a motion in arrest of judgment, the charge must comply with section 111—3(a) of the Code of Criminal Procedure of 1963, which requires that the nature and elements of the offense be set forth. (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) Moreover, if the offense is armed violence, the nature and elements of the predicate offense must be set forth. (*People v. Goodman* (1973), 12 Ill. App. 3d 400, 298 N.E.2d 1.) Defendant argues that his conviction must be reversed because in setting forth the elements of the predicate felony, aggravated battery under section 12—4(b)(1), the information did not allege use of a deadly weapon.

It is true that the information did not include the phrase "deadly weapon." It did, however, allege that while armed with a pistol defendant shot the victim in the neck. In *People v. Dickerson* (1975), 61 Ill. 2d 580, 338 N.E.2d 184, our supreme court held an indictment sufficient under section 111—3(a) where one of the elements of the offense, although not explicitly set forth, was necessarily implied. Here the use of a deadly weapon is necessarily implied, from the act of shooting Melchouri in the neck with the pistol, and the charge is sufficient under section 111—3(a). Furthermore, the charge clearly set forth the nature and elements of the offense with sufficient specificity to facilitate competent defense preparation and to enable defendant to plead the judgment as a bar to further prosecution for the same offense. *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244.

Defendant's next contention concerns the jury instructions on armed violence. Section 33A—1 of the Criminal Code defines two categories of dangerous weapons. Category I weapons are firearms, tasers, knives, and the like, and category II weapons include bludgeons, blackjacks, and other similar instruments. Under section 33A—3, violation of the armed violence statute with a category I weapon is a Class X felony. A first violation with a category II weapon is, however, a Class 2 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty. In the instant case, the jury instruction defining armed violence stated:

"A person commits the crime of armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law. Aggravated battery is a felony as defined by Illinois Law."

The issues instruction on armed violence was similar. Other instructions defining aggravated battery were, of course, also given.

■■ Defendant contends that his conviction of Class X armed violence

must be reduced to Class 2 armed violence because the jury was not given an opportunity to make a finding of the category of weapon involved. Because he did not object to the instructions on armed violence for the reasons advanced here or tender alternatives thereto, this issue would ordinarily be considered waived. (See *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Defendant, however, relies on *People v. Stark* (1978), 59 Ill. App. 3d 676, 375 N.E.2d 826, and similar cases. In *Stark* the reviewing court reduced the defendant's conviction of theft of property valued over $150, a Class 3 felony, to misdemeanor theft because the jury, which returned a general verdict of guilty, was not instructed that an element of the offense was value over $150. The court held that the issue had not been waived despite the fact that the defendant neither objected to the relevant instructions nor tendered alternatives.

We believe that defendant's reliance on *Stark* is misplaced. In *Stark* and the other cases cited by the defendant, the jury made absolutely no finding with respect to the value of the property stolen. In the instant case, however, the jury was instructed that an element of armed violence was that defendant was armed with a dangerous weapon. The only weapon of which any evidence was presented was a pistol, a category I weapon. In view of the verdict, it is apparent that the jury found that defendant was armed with a pistol. Under these circumstances, we hold that defendant waived any error. (*Roberts.*) Moreover, such error is clearly not a substantial defect cognizable under Supreme Court Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)).

Finally, defendant argues that because all the offenses charged were carved from the same physical act, judgment of conviction may be entered only with respect to armed violence. He maintains the mitimus is unclear whether judgment was entered on all four verdicts or only on armed violence and urges this court to clarify the matter. The State agrees that judgment may be entered only with respect to armed violence. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

We believe that the mittimus clearly reflects that judgment was entered only with respect to armed violence, and, therefore, this issue need not be considered.

For all the reasons stated above, the conviction and sentence entered by the Circuit Court of Henry County are affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.